**DAVID H. ANGELI**, OSB No. 020244
david@angelilaw.com
**MICHELLE KERIN**, OSB No. 965278
michelle@angelilaw.com
**AMY E. POTTER**, OSB No. 231794
amy@angelilaw.com
**AMANDA A. THIBEAULT**, OSB No.132913
amanda@angelilaw.com
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

*Attorneys for Defendant Ricky Lane Snodgrass*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| STATE OF OREGON<br><br>vs.<br><br>RICKY LANE SNODGRASS<br><br>Defendant. | Case No. ~~2:24-cr-~~ 6:24-Cr-00100-MC<br><br>**NOTICE OF REMOVAL OF STATE CRIMINAL PROSECUTION PURSUANT TO 28 U.S.C. § 1442(a)(1)**<br><br>**Removal of Case No. 24CR06021, Grant County Circuit Court.** |

## NOTICE OF REMOVAL OF STATE CRIMINAL PROSECTION

Defendant Ricky Lane Snodgrass, an employee of the United States Forest Service ("Forest Service"), through counsel, and pursuant to 28 U.S.C. §§ 1442 and 1455, files this Notice of Removal of State Criminal Prosecution ("Notice") to remove the case of *State v. Ricky Lane Snodgrass*, Case No. 24CR06021, from the Circuit Court of Grant County, Oregon, to the United States District Court for the District of Oregon, Pendleton Division.

Mr. Snodgrass, as directed by the Forest Service, oversaw a prescribed fire or burn that the Forest Service conducted on federal land in Grant County, Oregon. After the fire unexpectedly spread to private land because of an unpredictable wind event, the State charged him with reckless burning, a Class A misdemeanor under Oregon law. Because Mr. Snodgrass was acting in his official capacity as a federal official and intends to argue that he is immune from prosecution based on the Supremacy Clause, he is entitled to have his case heard in federal court. 28 U.S.C. § 1442(a)

Pursuant to 28 U.S.C. § 1455(a), copies of all process, pleadings, and orders served upon Mr. Snodgrass, along with the docket, are attached as Exhibits 1-7.[1] Mr. Snodgrass provides the following in support of his notice of removal.

## BACKGROUND

The Forest Service, an agency of the United States Department of Agriculture, manages over 190 million acres of land in the United States. *See* https://www.fs.usda.gov/about-agency/meet-forest-service (last visited March 15, 2024). The mission of the Forest Service is to manage and protect the nation's forests and grasslands. *Id.* As part of that mission, the Forest Service frequently engages in what it calls "prescribed" fires or burns. These prescribed burns are currently part of a ten-year year plan, established in 2022, by the Forest Service to manage the growing danger posed by wildfires; the Forest Service has made clear that the United States is currently in a wildfire crisis. *See Confronting the Wildfire Crisis* available at https://www.fs.usda.gov/sites/default/files/Confronting-Wildfire-Crisis.pdf (last visited March 15, 2024).

---

[1] The State includes personal identifiable information in some of its publicly filed documents. Those documents will be redacted for filing in this Court.

Prescribed burns involve "the controlled application of fire by a team of fire experts under specified weather conditions to restore health to ecosystems that depend on fire." *See* https://www.fs.usda.gov/managing-land/prescribed-fire (last visited March 15, 2024). By using prescribed burns, the Forest Service not only improves habitats and removes invasive species, but also "reduce[s] the risk of unwanted wildfires in the future." *Id.*

Prescribed burns are based on "burn plans" that are written by specialists and incorporate the considerations of multi-disciplinary teams. "Burn plans identify—or prescribe—the best conditions under which trees and other plants will burn to get the best results safely." *Id.* Burn plans consider a variety of important factors, including weather, moisture, topography, the type of fuel present in the burn area (aka, "unit"), required staffing, and other conditions. These conditions are run through various computer models to provide appropriate parameters for a prescribed burn at the specific location. These results are reviewed and validated again by experienced federal personnel and ultimately, if appropriate, incorporated in the burn plan.

No later than 24 hours before the prescribed burn, Forest Service management and burn team leaders must convene an ignition authorization briefing. *See National Prescribed Fire Program Review*, Office of the Chief of the U.S. Forest Service, at 17-19 (Sept. 2022) ("Fire Program Review").[2] The meeting involves a robust review of critical elements of the burn plan, including weather conditions, drought impact, fuel density, and staffing issues, to ensure that the conditions are appropriate for the prescribed burn and that the burn plan's objectives will be met safely. *Id.*; *see also id.* Appendix C at 4-5. At the conclusion of that meeting, the appropriate Forest Service agency administrator—in this case, the Malheur National Forest Supervisor, with

---

[2] Available at https://www.frames.gov/documents/usfs/USFS_20220908_National-Prescribed-Fire-Program-Review.pdf (last visited March 15, 2024).

the concurrence of the Blue Mountain District Ranger[3]—makes the decision whether to proceed with the prescribed burn as outlined in the burn plan. Upon receiving that authorization, a "Burn Boss"—with the assistance of a "Firing Boss," a "Holding Boss," and numerous other professionals—carries out the agency administrator's directive. *See* https://deschutescollaborativeforest.org/meet-the-firefighters/ (last visited March 15, 2024).

On average, the Forest Service ignites about 4,500 prescribed burns each year to treat over one million acres of Forest Service land. *See* https://www.fs.usda.gov/inside-fs/leadership/national-prescribed-fire-program-review-released-video (last visited March 15, 2024). There are, of course, risks associated with conducting prescribed fires. But federal authorities, including the Chief of the Forest Service, have concluded that those risks are outweighed by the risks associated with *not* utilizing that tool:

> We can never guarantee that prescribed fires won't escape because there are risks when we use this tool. It's a trade-off we have to take seriously together with communities. The alternative is more large and destructive wildfires like we have seen the past several decades—a result of the combination of overgrown forests, climate change, a growing number of homes in the wildland-urban interface, and more than a century of fire suppression.

Fire Program Review at 3 (statement of Forest Service Chief Randy Moore).

This case arises out of a prescribed burn—the Starr RX Prescribed Burn 2022—conducted by the Forest Service on October 19, 2022, on the Malheur National Forest in Grant County. Mr. Snodgrass was the Burn Boss for the fire; he oversaw a prescribed burn that was authorized by the Malheur National Forest Supervisor and the Blue Mountain District Ranger.

---

[3] The Blue Mountain Ranger District is one of three districts within the Malheur National Forest.

*See* Starr RX Prescribed Burn Plan 2022, attached hereto as Exhibit 8.[4] Unfortunately, the risks foreseen by Forest Service Chief Moore in his Fire Program Review materialized that day; late in the afternoon, sudden unforeseen high winds caused the fire to spot over onto adjacent private land. The burn crew was able to control the fire within approximately an hour, but not before roughly eighteen private acres sustained burn damage. No people or livestock were injured.

Even though Mr. Snodgrass was conducting a prescribed burn as authorized and directed by the Forest Service, the Grant County Sheriff arrested Mr. Snodgrass and—before conducting any investigation into the circumstances of the fire—charged Mr. Snodgrass with "reckless burning" in violation of Oregon law. This action removed Snodgrass, the leader of the prescribed burn, from his crew in the middle of its active effort to extinguish the fire. Over a year later, on February 2, 2024, Mr. Snodgrass was indicted by a Grant County grand jury for Reckless Burning in violation of ORS 164.335, a Class A Misdemeanor. He was arraigned on February 16, 2024.[5] Mr. Snodgrass denies the allegations.[6]

Because Mr. Snodgrass, as the Burn Boss for the Starr RX Prescribed, was acting as a federal officer, under the color of his office at the time of the fire, he seeks to have any charges against him heard in federal court. He also asserts that he is entitled to immunity for his actions. As such, removal of this action is appropriate.[7] 28 U.S.C. § 1442.

---

[4] Because of safety concerns, the Burn Plan has been redacted to remove names and contact information.

[5] Mr. Snodgrass is charged with a misdemeanor and consents to trial before a magistrate judge. His formal consent is being filed contemporaneously with this Notice of Removal.

[6] "It was settled long ago that the federal officer, in order to secure removal, need not admit that he actually committed the charged offenses." *Willingham v. Morgan*, 395 U.S. 402, 408 (1969) (citing *Maryland v. Soper*, 270 U.S. 9, 32-33 (1926)).

[7] If a court ultimately determines he is not entitled to immunity, Mr. Snodgrass seeks a jury trial on the charges against him.

## I. GROUNDS FOR FEDERAL OFFICER REMOVAL UNDER 28 U.S.C. § 1442

### A. Removal Generally

When an officer of the United States is charged with a state crime, he is entitled to have the case removed to federal court if the charges are "for or relating to any act under color of such office." 28 U.S.C. §1442(a)(1). This right is "absolute whenever a suit in a state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in a federal court." *Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (citation omitted). Federal officer removal "is not 'narrow' or 'limited.'" *Id.* (citation omitted). And the removal process applies to state misdemeanors. *See Wyoming v. Livingston*, 443 F.3d 1211, 1225 (10th Cir. 2006) (affirming removal of misdemeanor charges against Fish and Wildlife employees who trespassed while engaged in wolf capturing operation); *see also City of Aurora v. Erwin*, 706 F.2d 295 (10th Cir. 1983) (case involving removal of petty offense).

To obtain removal, Mr. Snodgrass is required to show that (1) he is an officer within the meaning of the statute, (2) "a causal nexus exists" between the State's charges and his actions, and (3) he has a "colorable" federal defense to the State's charges. *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) (*citing Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)).

When a federal officer files a notice of removal, a court must promptly examine the notice to ensure "it clearly appears on the face of the notice and any exhibits" that removal is proper. 28 U.S.C. § 1455(b)(4). The notice must make clear that the defendant (1) was acting in his official capacity and (2) has a federal defense. At the removal stage, the officer need not prove that his defense will be successful, only that it be "colorable." *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999). This Notice sufficiently establishes the basis for removal.

If the State opposes removal, an evidentiary hearing must be held unless the parties waive it. 28 U.S.C. § 1455(b)(5); *see, e.g.*, *Livingston*, 443 F.3d at 1225 n.8 ("It is well settled that parties may stipulate to a waiver of the evidentiary hearing, which would not be permitted if holding the hearing were a jurisdictional requirement.").

### B. Removal Is Proper.

Removal is proper because Mr. Snodgrass, a federal officer, was acting "under the color of his office" and has a "colorable" federal defense. *Acker*, 527 U.S. at 431. While Mr. Snodgrass must make a preliminary showing that he has such a defense, he need not "'win his case before he can have it removed.'" *Id.* (citation omitted). And this Court must credit Mr. Snodgrass's "theory of the case" when considering whether he has satisfied the jurisdictional elements. *Id.* at 432.

The reason for removal is to ensure that Mr. Snodgrass's defense of federal immunity is heard in federal court. *Id.* at 431. This Notice—which sets forth all the necessary elements for removal—will allow just that.

#### 1. Mr. Snodgrass Is a Federal Officer.

Mr. Snodgrass is an officer of the United States. There is no debate that, at the time of the fire, Mr. Snodgrass was employed with the Forest Service, a federal agency. And he was acting in his official capacity while conducting the prescribed burn. This ends this portion of the inquiry; Mr. Snodgrass is an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1).

#### 2. Mr. Snodgrass Was Acting Under Color of Office.

Mr. Snodgrass was also operating "under color of office" while he was serving as the Burn Boss for the Starr RX fire when it spilled over and spotted onto private land. Mr. Snodgrass was acting "under color of office" if he can show "a nexus, a 'casual connection' between the

charged conduct and the asserted official authority." *Acker*, 527 U.S. at 431 (citation omitted). He can.

The facts in this case are clear: the Forest Service authorizes its employees to conduct prescribed burns consistent with Forest Service policies. *See Livingston*, 443 F.3d at 1227-28 (concluding that federal employees were authorized by agency regulations to monitor wolves). Mr. Snodgrass was supervising an approved prescribed burn for the Forest Service when the fire spotted on to private adjacent land. He was engaged in his official duties and not on "'a personal frolic or detour'." *Hawaii v. Broughton*, No. CR. 13-00415 HG, 2013 WL 3288381, at *4 (D. Haw. June 28, 2013) (quoting *United States v. Schweitzer*, 35 Fed. Appx. 331, 332 (9th Cir. 2002)) (concluding officer that was commuting to work in marked vehicle was engaged in official duties when he confronted motorist). And the charge—reckless burning—is causally connected to those duties. *Acker*, 527 U.S. at 431. This is sufficient.

The State may take issue with how the prescribed burn was managed or whether it should have moved forward, but those quarrels are "irrelevant to whether [Mr. Snodgrass] acted under the color of federal authority for removal purposes." *Georgia v. Heinze*, 637 F. Supp. 3d 1316, 1324 (N.D. Ga. 2022). Even if the State could show that Mr. Snodgrass made a mistake in implementing the burn plan (which it cannot), that would not change the analysis here. *See Clifton v. Cox*, 549 F.2d 722, 727 (9th Cir. 1977) (holding that "courts [have] recognized the general rule that errors of judgment in what one conceives to be his legal duty will not, alone, serve to create criminal responsibility of a federal officer").

### 3. Mr. Snodgrass Has a Colorable Federal Defense.[8]

Finally, Mr. Snodgrass intends to argue that he is immune from State prosecution pursuant to the Supremacy Clause of the United States Constitution (Article VI, Clause 2). Federal officers are immune from state prosecution if "(1) the federal agent was performing an act which he was authorized to do by the law of the United States and (2) in performing that authorized act, the federal agent did no more than what was necessary and proper for him to do." *Kentucky v. Long*, 837 F.2d 727, 744 (6th Cir. 1988); *see also California v. Dotson*, No. 12CR0917 AJB, 2012 WL 1904467, at *2 (S.D. Cal. May 25, 2012) (noting that defendant argued that "[Supremacy Clause] immunity protects federal officers from state court prosecution when the prosecution is based on activities performed in the scope and course of duty where the officers [*sic*] conduct was 'necessary and proper'" and then confirming test (citation omitted)).

Mr. Snodgrass intends to argue that "he reasonably believed that his actions were necessary and proper in the performance of his duties." *Broughton*, 2013 WL 3288381, at *5 (citation omitted). For the defense to succeed, a defendant need not "show that his action was in

---

[8] Because removal depends on the existence of a federal defense, that is the only defense Mr. Snodgrass raises here. But Mr. Snodgrass believes he may have additional grounds to seek dismissal, including but not limited to the use of non-admissible evidence during the grand jury in violation of ORS 132.320 and a violation of his rights to a fair charging process under the Oregon Constitution and the Due Process Clause of the United States Constitution.

In addition, to prove the charge of reckless burning, the State must prove beyond a reasonable doubt:

> (1) that the defendant performed an act that caused a fire or explosion so as to damage another person's property; (2) that the act presented such a substantial and unjustifiable risk of damaging the property that only a person demonstrating a gross deviation from a reasonable standard of care would perform it; and (3) that the defendant was aware of the risk and chose to disregard it.

*State v. McBean*, 189 Or. App. 235, 238, 74 P.3d 1127, 1129 (2003). It does not appear the State offered any evidence to the grand jury to prove that the spot fire resulted from any reckless act by Mr. Snodgrass.

fact necessary or in retrospect justifiable, only that he reasonably thought it to be." *Clifton*, 549 F.2d at 728. And again, at this stage of the proceedings the officer need not prove that his defense will be successful, only that it be "colorable." *Acker*, 527 U.S. at 431.

Mr. Snodgrass intends to argue that he was authorized to conduct a prescribed burn pursuant to Forest Service policies and the specific authorization of the Malheur Forest Supervisor and the Blue Mountain District Ranger. He did his job, and believed his actions were necessary and proper. The fact that an unexpected wind event caused spot fires on private land does not refute any of that.

By raising this defense, Mr. Snodgrass has established a basis for removal. *Broughton*, 2013 WL 3288381, at *5; *see also Livingston*, 443 F.3d at 1224 ("Removal is appropriate, for example, where the federal officer alleges Supremacy Clause immunity as a defense."); *Texas v. Kleinert*, 855 F.3d 305, 313 (5th Cir. 2017) ("Because Kleinert plausibly alleged that he was acting as a federal officer at the time of the shooting, he sufficiently asserted a colorable federal defense."); *Heinze*, 637 F. Supp. 3d at 1325 ("The Defendants have alleged that they were acting as federal officers in accordance with federal law and therefore entitled to immunity. That is all that is required [for removal]."); *New York v. Tanella*, 239 F. Supp. 2d 291, 296-98 (E.D.N.Y. 2003), *aff'd* 374 F.3d 141 (2d Cir. 2004) (finding colorable federal defense based on allegations that he is immune from prosecution). Nothing else is required. *See California v. Mesa*, 489 U.S. 121, 136 (1989) (concluding that "it is the raising of a federal question in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Art. III purposes" and finding the removal statute "serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged" (citations omitted)).

The State's belief that the prescribed burn constituted a violation of state law—something Mr. Snodgrass strongly disputes—cannot defeat his immunity defense, much less render his defense not colorable. "Supremacy Clause immunity does not require that federal law explicitly authorize a violation of state law." *Livingston*, 443 F.3d at 1227.

Nor can the State point to the fact that the fire ultimately did not go as planned to defeat an immunity defense. Courts may not rely on hindsight or facts not known to the defendant at the time of the incident in determining whether a federal official has proffered a colorable federal defense. The law "require[s] courts to evaluate the circumstances as they appear to federal officers at the time of the act in question, rather than the more subtle and detailed facts later presented to a court." *Id.* at 1229.

Here, Mr. Snodgrass intends to demonstrate that he and the other members of the team involved in the prescribed burn were following the burn plan and the direction of the Forest Supervisor and District Ranger and believed, based on years of experience and heavily audited standards and procedures, that the burn could be accomplished safely. *See* Ex. 8 at 5-7. "For a federal employee to be stripped of the Supremacy Clause immunity it must be shown that the employee employed means which he cannot honestly consider reasonable in discharging his duties or that the act was made out of malice or with criminal intent." *Dotson*, 2012 WL 1904467, at *3 (*citing Clifton*, 549 F.2d at 728). There is no such allegation here, nor could such an allegation plausibly be made.

Mr. Snodgrass has presented a colorable defense. *Acker*, 527 U.S. at 431. Removal is, therefore, proper.

///

///

## CONCLUSION

"[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Willingham*, 395 U.S. at 407. Mr. Snodgrass seeks that opportunity and asks the Court to find that it appears on the face of this Notice that removal is proper.

DATED this 15th day of March 2024.

Respectfully submitted,

*s/ Amy E. Potter*
**ANGELI LAW GROUP LLC**
DAVID H. ANGELI, OSB No. 020244
MICHELLE KERIN, OSB No. 965278
AMY E. POTTER, OSB No. 231794
AMANDA A. THIBEAULT, OSB No. 132913
*Attorneys for Defendant Ricky Lane Snodgrass*

# CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2024, a true and correct copy of the foregoing **NOTICE OF REMOVAL** has been filed with the Court's CM/ECF filing system and that the foregoing will be served on:

| | |
|---|---|
| Jim Carpenter<br>Grant County District Attorn<br>carpenterj@grantcounty-or.gov | \_\_\_\_\_ By hand delivery<br>\_\_\_\_\_ By first-class mail*<br>  x   By e-mail<br>\_\_\_\_\_ By overnight mail<br>\_\_\_\_\_ By facsimile transmission<br>\_\_\_\_\_ Fax #:<br>\_\_\_\_\_ Email: |

Dated: March 15, 2024.

ANGELI LAW GROUP LLC

s/ *Amy E. Potter*
DAVID H. ANGELI, OSB No. 020244
MICHELLE KERIN, OSB No. 965278
AMY E. POTTER, OSB No. 231794
Attorneys for Defendant Samuel Troy Landis

PAGE 1 – CERTIFICATE OF SERVICE